**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 18-61050-CIV-MARTINEZ/SNOW**

LOUIS VUITTON MALLETIER, S.A.,

              Plaintiff,

vs.

2018COPY.ORG, *et al.*,

              Defendants.

_____/

**PLAINTIFF'S *EX PARTE* MOTION FOR ORDER AUTHORIZING ALTERNATE**
**SERVICE OF PROCESS ON DEFENDANTS PURSUANT TO FEDERAL RULE OF**
**CIVIL PROCEDURE 4(f)(3) AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Louis Vuitton Malletier S.A., ("Plaintiff") hereby moves this Honorable Court,

on an *ex parte* basis,[1] for an order authorizing alternate service of process on Defendants, the

individuals or entities of unknown makeup identified on Schedule "A" hereto ("Defendants")

pursuant to Federal Rule of Civil Procedure 4(f)(3), and in support submits the following

memorandum of law.

**I.**      **INTRODUCTION**

Defendants are knowingly and intentionally promoting, advertising, distributing, offering

for sale, and selling goods bearing counterfeits and infringements of Plaintiff's registered

trademarks within this district and throughout the United States through the fully interactive,

---

[1] On May 11, 2018, Plaintiff filed its *Ex Parte* Application for Temporary Restraining Order and
Preliminary Injunction (the "Application for TRO") [ECF No. 4], which is currently pending
before the Court.  Accordingly, Plaintiff is moving for alternate service *ex parte* as Plaintiff has
yet to provide Defendants with notice of this action. (See Declaration of Virgilio Gigante in
Support of Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process on
Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Gigante Decl.") ¶ 2, n.1, filed
herewith.

commercial Internet websites and supporting domains operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names").

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order authorizing service of process on Defendants via electronic mail ("e-mail") and website publication. E-mail and website publication service is appropriate and necessary in this case, because Defendants (1) operate via the Internet; and (2) rely on electronic communications to operate their businesses. As such, Plaintiff has the ability to contact Defendants directly and provide notice of Plaintiff's claims against them electronically via e-mail to Defendants' known e-mail addresses, including onsite contact forms embedded directly in the Defendants' respective websites. Additionally, Plaintiff has created a publication website where it will be posting copies of the Complaint and all other documents filed in this action. Plaintiff respectfully submits that an order allowing service of process and service of all subsequent pleadings and discovery via e-mail and website publication in this case will benefit all parties and the Court by ensuring Defendants receive immediate notice of the pendency of this action and allowing this action to move forward expeditiously.

## II.   STATEMENT OF FACTS

### A.   Defendants Have Valid and Operational E-mail Addresses.

Defendants operate Internet-based businesses and use e-mail, including onsite contact forms, as a means of communication. Specifically, Defendants are able to receive notice of this action electronically via e-mail to Defendants' e-mail addresses provided as part of the domain registration for the Subject Domain Names, via e-mail to the e-mail addresses identified directly on Defendants' respective Internet websites, including customer service e-mail addresses and onsite contact forms, or via e-mail to Defendants' registrars. (See Gigante Decl. ¶ 5; Declaration of Kathleen Burns in Support of Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate

Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) ("Burns Decl.") ¶ 3, filed herewith.)  As a practical matter, it is necessary for merchants who operate entirely online, such as Defendants, to provide customers with electronic means of contact by which those customers may contact the merchants to ask questions about the merchants' products, place orders from the merchants, and receive information from the merchants regarding the shipments of orders.  Moreover, e-commerce defendants generally must maintain accurate e-mail addresses where the domain registrar may communicate with them regarding issues related to the purchase, transfer, and maintenance of their domain name accounts. Additionally, Plaintiff has created a publication website appearing at the URL, http://servingnotice.com/Lxnnnw/index.html such that anyone accessing the website will find copies of all documents filed in this action. (See Gigante Decl. ¶ 6.)

Plaintiff's counsel obtained the publicly available domain name registration records ("WHOIS" records) for each of the Subject Domain Names identifying the contact e-mail addresses Defendants provided their registrars. (See Gigante Decl. ¶ 4 see also Exhibit "2" attached to the Declaration of Virgilio Gigante in Support of Plaintiff's Application for TRO, a chart outlining, in part, the e-mail addresses identified on the WHOIS records for the Subject Domain Names.)[2]  Additionally, Plaintiff's counsel obtained the available e-mail addresses and onsite contact forms Defendants identified directly on their respective Internet websites. (See Gigante Decl. ¶ 4.)  Plaintiff's counsel provided the WHOIS e-mail addresses and the available onsite contact e-mail addresses, including customer service e-mail addresses and onsite contact forms, to Plaintiff's investigator in order to verify e-mail as a successful means to contact

---

[2]  Plaintiff's Application for TRO, together with supporting declarations and exhibits are incorporated herein by reference.

Defendants. (Id.)   Upon Plaintiff's counsel's request, Kathleen Burns ("Burns"), an officer of Invisible Inc., a licensed private investigative firm, recently sent pretext e-mails to each Defendant via each Defendant's e-mail address(es) identified in the WHOIS records for the respective Subject Domain Name(s) and/or via the e-mail address(es) identified directly on the Internet website(s) operating under the respective Subject Domain Name(s), including customer service e-mail addresses and onsite contact forms. (See Burns Decl. ¶ 3 and Exhibit "1" thereto.) At least one e-mail or onsite contact form for each Defendant was not bounced back nor returned as "undeliverable," thereby demonstrating the e-mails were delivered and the e-mail addresses are valid and operational.  (Id.)  See Chanel, Inc. v. Zhixian, Case No. 10-cv-60585-JIC, 2010 WL 1740695, at *3 (S.D. Fla. April 29, 2010) (finding that e-mails sent to e-mail addresses supplied by Defendant to his domain name registrars that did not bounce back presumptively reached Defendant).  Moreover, Defendants can be contacted via their designated Registrar's email address. (See Burns Decl. ¶ 3; Gigante Decl. ¶ 5.)

Furthermore, Plaintiff will be able to provide each Defendant notice of this action via public announcement on its publication website. (See Gigante Decl. ¶ 6.)  Plaintiff has created a publication website appearing at the URL http://servingnotice.com/Lxnnnw/index.html, whereon copies of the Complaint, and all other pleadings, documents and orders issued in this action will be posted such that anyone accessing the website will find copies of all documents filed in this action. (Id.)  The address and a link to the publication website will be provided to Defendants via e-mail to Defendants' known e-mail addresses and will be included upon service of process in this matter. (Id.)

### B.    Defendants Rely on Electronic Communications.

Defendants have structured their website businesses so that the means for customers to purchase Defendants' counterfeit goods at issue is by placing an order electronically. (See

Gigante Decl. ¶ 3.)  Defendants purport to take and confirm orders online as well as via e-mail. (See id.) Clearly, Defendants rely on electronic means as a reliable form of contact.

## III.   ARGUMENT

Pursuant to Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other unincorporated association may be served with process in any manner prescribed by Rule 4(f) for serving foreign individuals. Federal Rule of Civil Procedure 4(f)(3), allows a district court to authorize an alternate method for service to be effected upon a foreign defendant, provided that it is not prohibited by international agreement and is reasonably calculated to give notice to the defendant.  In the present matter, alternate service of process via e-mail and website publication are appropriate given that Defendants have established Internet-based businesses by which they rely on electronic communication for their operation.  Accordingly, this Court should permit service on Defendants by e-mail and website publication.

### A.     The Court May Authorize Service via E-mail and Website Publication Pursuant to Federal Rule of Civil Procedure 4(f)(3).

Federal Rule of Civil Procedure 4(h)(2) allows a foreign business entity to be served with process "in any manner prescribed by Rule 4(f)," including any manner ordered under Rule 4(f)(3). U.S. Commodity Futures Trading Comm'n v. Aliaga, 272 F.R.D. 617, 619 (S.D. Fla. 2011). A foreign partnership or other unincorporated association can therefore be served in the same manner as serving a foreign individual pursuant to Rule 4(f)(3). Id. Federal Rule of Civil Procedure 4(f)(3) allows alternative methods for service of process, so long as those methods are not prohibited by international agreement and are directed by the Court.  See Prewitt Enters., Inc. v. The Org. of Petrol. Exporting Countries, 353 F.3d 916, 923 (11th Cir. 2003).  See also Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Case No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007); Rio Props. Inc., v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir.

2002).  In fact, "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." <u>Chanel, Inc. v. Zhixian</u>, 2010 WL 1740695, at * 2 (quoting <u>Rio Props.</u>, 284 F.3d at 1014 and citing <u>Mayoral–Amy v. BHI Corp.</u>, 180 F.R.D. 456, 459 n. 4 (S.D. Fla. 1998)).

The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court.  <u>Prewitt Enters., Inc.</u>, 353 F.3d at 921; <u>Rio Props.</u>, 284 F.3d at 1116.  <u>See, e.g.</u>, <u>Brookshire Bros., Ltd.</u>, 2007 WL 1577771, at *2 (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"); <u>In re Int'l Telemedia Assocs.</u>, 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case). Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3).  <u>Rio Props.</u>, 284 F.3d at 1114-15; <u>see also</u> <u>Brookshire Bros., Ltd.</u>, 2007 WL 1577771, at *1.  In Brookshire, the Honorable Judge Marcia G. Cooke allowed substitute service on a party's attorney pursuant to Rule 4(f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule 4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

<u>Brookshire Bros., Ltd.</u>, 2007 WL 1577771, at *1 (quoting <u>Rio Props.</u>, 284 F.3d at 1015). <u>Accord</u> <u>TracFone Wireless, Inc. v. Bitton</u>, 278 F.R.D. 687, 692 (S.D. Fla. Jan 11, 2012) (noting that, in

regards to Rule 4(f)(3), "there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive "or," are meant to be read as a hierarchy.") Judge Cooke further held, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." Brookshire Bros., Ltd., 2007 WL 1577771, at *2.

Additionally, the Constitution itself does not mandate that service be effectuated in any particular way.  Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Brookshire Bros., Ltd., 2007 WL 1577771, at *1 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); see also TracFone Wireless, Inc., 278 F.R.D. at 692; Rio Props., 284 F.3d at 1016.  Accordingly, federal courts have allowed a variety of alternative service methods, including service by e-mail and website publication, where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action. See, e.g., Rio Props., 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); In re Int'l Telemedia Assocs., 245 B.R. at 721 ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."); National Association for Stock Car Auto Racing, Inc. v. Does, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (in "acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [Plaintiff's Website].").

Here, service on Defendants by e-mail and/or website publication will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiff's claims. Plaintiff has verified that each Defendant has at least one electronic means of contact, demonstrating that this means of contact is not just effective, but the most reliable means of communicating with that Defendant, and consequently, the most reliable means of providing Defendants with notice of this action. (See Gigante Decl. ¶¶ 4-5; Burns Decl. ¶ 3.) Moreover, service via publication will be an additional source of reliability as Defendants will be able to see copies of the Complaint and all other documents in this matter electronically via their Internet browser. (See Gigante Decl. ¶ 6.)

E-mail service on an online business defendant is appropriate and constitutionally acceptable in a case such as this when the plaintiff has proven that e-mail is the most effective means of providing the defendant notice of the action. See Rio Properties, 284 F.3d at 1017 (concluding "not only that service of process by e-mail was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]."). See also Popular Enters., LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts.") (citation omitted). The Rio Properties and Popular Enters., LLC courts each determined e-mail service to be appropriate in part because, as in this case, the defendants conduct their business online, use e-mail, including

onsite contact forms, in their business, and encourage parties to contact them via e-mail and onsite contact forms. See id.

In cases that are factually similar to this one, a number of Courts have held that alternate forms of service pursuant to Rule 4(f)(3), such as e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." Rio Properties, 284 F.3d at 1018; see also Chanel, Inc. v. Zhixian, 2010 WL 1740695, at *3 (e-mail service "reasonably calculated to notify Defendants of the pendency of this action and provide him with an opportunity to present objections."); TracFone Wireless, Inc., 278 F.R.D. at 693 (finding that service of process by e-mail was reasonably calculated to apprise the defendants of the action and give it an opportunity to respond); Popular Enters., LLC, 225 F.R.D. at 563 (same); FTC v. PCCare247 Inc., Case No. 12-cv-7189-PAE, 2013 U.S. Dist. LEXIS 31969, at * 10 (S.D.N.Y. March 7, 2013) (service of process by e-mail comports with due process where plaintiff has "demonstrated a high likelihood that defendants will receive and respond to emails sent to these addresses."); In re Int'l Telemedia Associates, 245 B.R. at 722 ("A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules.  Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party." (concluding e-mail and facsimile service to be appropriate)); Chanel, Inc. v. Zhibing, Case No. 09-cv-02835, 2010 WL 1009981, at *4 (W.D. Tenn. March 17, 2010) (stating that e-mail service has the "greatest likelihood" of reaching e-commerce merchants and noting, "The federal judiciary's own CM/ECF system alerts parties . . . by e-mail messages."  Alternate service via e-mail granted).[3]

---

[3] See, e.g., Chanel, Inc. v. 5areplicachanel.com, Case 18-cv-60778-JEM (April 19, 2018) (Order granting alternative service, *inter alia*, via e-mail); Chanel, Inc. v. brand234.com, Case No. 18-cv-60615-JEM (S.D. Fla. Apr. 5, 2018) (same); Abercrombie & Fitch Trading Co. v.

Plaintiff submits that allowing e-mail service in the present case is appropriate and comports with constitutional notions of due process, particularly given Defendants' decision to conduct their illegal businesses using the Internet and utilizing e-mail as a primary means of communication.

Additionally, service of a defendant via publication on a website has been deemed an appropriate means of service by publication.  See National Association for Stock Car Auto Racing, 584 F. Supp. 2d at 826.[4]  A proposed method of publication need only be "reasonably

---

abercrombie-and-fitchs.com, Case No. 17-cv-61305-JEM (S.D. Fla. July 20, 2017) (same); Chanel, Inc. v. shopchanelsale.com, Case No. 17-cv-60965-JEM (S.D. Fla. June 9, 2017) (same); Acushnet Company v. 168golfshop, Case No. 16-cv-61537-JEM (S.D. Fla. August 2, 2016, entered on docket August 4, 2016)  (same); see also Louis Vuitton Malletier, S.A. v. 365bag.site, Case 18-cv-60232-UU (Feb. 8, 2018) (same); Apple Corps Limited v. shirtsforyou.net, Case No. 18-cv-60221-RNS (S.D. Fla. Feb. 8, 2018) (same); Chanel, Inc. v. 4sreplicachanel.com, Case No. 17-cv-61838-CMA (S.D. Fla. Sept. 27, 2017) (same); Chanel, Inc. v. fakebags.ru, No. 16-cv-62897-GAYLES, 2016 U.S. Dist. LEXIS 191594 (S.D. Fla. Dec. 30, 2016) (same); Taylor Made Golf Co. v. Aucheapgolfsets.com, No. 15-62573-CIV-DIMITROULEAS, 2016 U.S. Dist. LEXIS 186873 (S.D. Fla. Mar. 1, 2016) (same); Marc Jacobs Trademarks, LLC et al v. marc-jacobsoutlet.com, Case No. 15-cv-62512-JIC (S.D. Fla. Feb. 24, 2016) (same); Gucci Am., Inc. v. 6abag.net, No. 15-60959-CIV-BLOOM, 2015 U.S. Dist. LEXIS 178023 (S.D. Fla. Aug. 31, 2015) (same); Chanel, Inc. v. 2012leboyhandbag.com, No. 15-61986-CIV -ZLOCH, 2015 U.S. Dist. LEXIS 178012 (S.D. Fla. Nov. 16, 2015) (same).

[4] Chanel, Inc. v. 5areplicachanel.com, Case 18-cv-60778-JEM (April 19, 2018) (Order granting alternative service via e-mail and website publication);  Chanel, Inc. v. brand234.com, Case No. 18-cv-60615-JEM (S.D. Fla. Apr. 5, 2018) (Order granting alternative service via e-mail and website publication); Abercrombie & Fitch Trading Co. v. abercrombie-and-fitchs.com, Case No. 17-cv-61305-JEM (S.D. Fla. July 20, 2017)  (same); Chanel, Inc. v. shopchanelsale.com, Case No. 17-cv-60965-JEM (S.D. Fla. June 9, 2017) (same); Acushnet Company v. 168golfshop, Case No. 16-cv-61537-JEM (S.D. Fla. August 2, 2016, entered on docket August 4, 2016) (same); Goyard St-Honore v. 2016goyard.com, Case No. 16-cv-60620-JEM (S.D. Fla. June 21, 2016) (same); see also Louis Vuitton Malletier, S.A. v. 365bag.site, Case 18-cv-60232-UU (Feb. 8, 2018) (same); Taylor Made Golf Co. v. Aucheapgolfsets.com, No. 15-62573-CIV-DIMITROULEAS/S, 2016 U.S. Dist. LEXIS 186873 (S.D. Fla. Mar. 1, 2016) (same); Marc Jacobs Trademarks, LLC et al v. marc-jacobsoutlet.com, Case No. 15-cv-62512-JIC (S.D. Fla. Feb. 24, 2016) (same); Chanel, Inc. v. bestbuyhandbag.com, No. 14-CV-62191-ROSENBERG/BRAN, 2014 U.S. Dist. LEXIS 177735 (S.D. Fla. Dec. 29, 2014) (same); Gucci Am., Inc. v. 6abag.net, No. 15-60959-CIV-BLOOM, 2015 U.S. Dist. LEXIS 178023 (S.D. Fla. Aug. 31, 2015) (same); Gucci Am., Inc. v. Chaussuresguccis.com, No. 13-Civ-23940-

calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." National Association for Stock Car Auto Racing, 584 F. Supp. 2d at 826 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315-16, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). In National Association for Stock Car Auto Racing, Inc. v. Does, the United States District Court for the Western District of North Carolina determined that the plaintiff could serve "Doe" defendants and apprise those defendants of a pending preliminary injunction hearing via publication on the plaintiff's website. Id.

Accordingly, Plaintiff has created a website appearing at the URL http://servingnotice.com/Lxnnnw/index.html whereon copies of the Complaint, pleadings, documents, and orders issued in this action will be posted.  (See Gigante Decl. ¶ 6.) The address and a link to the service website will be provided to each Defendant via its known e-mail accounts and will be included upon service of process in this matter. (See id.)  Publication of the Summonses, Complaint, and all subsequent pleadings, documents, and orders issued in this action will provide notice to Defendants sufficient to meet the due process requirements for service of process and notice pursuant to Federal Rule of Civil Procedure 4, apprise Defendants of the pendency of the action, and afford Defendants and any other interested parties an opportunity to present their objections.

---

COOKE/TORRES, 2014 U.S. Dist. LEXIS 188818 (S.D. Fla. Aug. 25, 2014) (same); S.A.S. Cassegrain v. Appleady5, No. 14-cv-61451-KMM, 2014 U.S. Dist. LEXIS 196918 (S.D. Fla. Aug. 5, 2014) (same); Tiffany NJ, LLC v. attiffany2013.net, No. 13-62739-CIV-ZLOCH, 2014 U.S. Dist. LEXIS 189043 (S.D. Fla. Apr. 8, 2014) (same); adidas AG v. 2013jeremyscottxadidas.com, 13-cv-61867-RSR, 2013 U.S. Dist. LEXIS 171628 (S.D. Fla. Dec. 5, 2013) (same).

**B.      E-mail and Publication Service Are Not Prohibited by International Agreement.**

Service via e-mail and website publication are not prohibited by international agreement.  Based upon the data provided in connection with Defendants' domain name registration and Internet websites, including all of the investigative data provided thereunder, Plaintiff has good cause to suspect Defendants are all residing in the People's Republic of China ("China") or other foreign countries.  (Gigante Decl. ¶ 7.)  Both China and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Service Convention"). (Gigante Decl. ¶ 8 and Composite Exhibit "1" attached thereto, Hague Service Convention and list of signatory Members.)  However, the Hague Service Convention does not preclude the Court from authorizing service of process via e-mail or website publication.

Alternative means of service, such as e-mail and publication, are not prohibited by the Hague Service Convention where a signatory nation has not expressly objected to those means.  See Stat Med. Devices, Inc. v. HTL-Strefa, Inc., Case No. 15-cv-20590-FAM, 2015 U.S. Dist. LEXIS 122000 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention is limited to the forms of service expressly objected to); Chanel, Inc. v. 5areplicachanel.com, Case 18-cv-60778-JEM (April 19, 2018) (authorizing e-mail and website publication service despite China's objection to Article 10); Louis Vuitton, Inc. v. brand234.com, Case No. 18-cv-60615-JEM (S.D. Fla. Apr. 5, 2018) (same);  Tiffany (NJ) LLC v. besttiffanyoutlet.com, Case No. 17-cv-62343-WPD (S.D. Fla. Jan. 18, 2018) (same); S.A.S. Jean Cassegrain et al v. accessoiresnet.info, Case 17-cv-61593-DMM (S.D. Fla. Sept. 27, 2017) (same); Chanel, Inc. v. 4sreplicachanel.com, Case 17-cv-61838-CMA (S.D. Fla. Sept. 27, 2017) (same) Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com, Case No. 17-cv-61033-

BB (S.D. Fla. May 31, 2017) (same); Louis Vuitton Malletier, S.A. v. 2015chinasale.com, Case 0:17-cv-60724-WPD (S.D. Fla. April 20, 2017) (same) Breitling U.S.A. Inc. v. 3C electronic, Case No. 17-cv-60519-UU (S.D. Fla. April 6, 2017) (same).[5]  Article 10 to the Hague Service Convention allows service of process through means other than a signatory's Central Authority, such as "postal channels" and "judicial officers," provided the State of destination does not object to those means.  See Hague Convention, Art. 10, 20 U.S.T. 361 (1969).  China has objected to the alternative means of service outlined in Article 10 of the Convention.  (Gigante Decl. ¶ 8.)  However, that objection is specifically limited to the means of service enumerated in Article 10, and China has not expressly objected to service via e-mail or publication.  (Gigante Decl. ¶ 8; see also Comp. Ex. 1 thereto, a true and correct printout of China's Declaration/Reservation/Notification in regards to the Hague Convention.)  Because the declarations to the Hague Convention filed by China do not object to e-mail and publication service, "a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]."  Gurung v. Malhotra, 279 F.R.D. 215, 219 (S.D.N.Y. 2011); see also WhosHere, Inc. v. Orun, Case No. 13-cv-00526-AJT, 2014 U.S. Dist. LEXIS 22084, at *9 (E.D. Va. Feb. 20, 2014) (authorizing e-mail service, noting objection to means of service listed in Article 10 "is specifically limited to the enumerated means of service in Article 10.").

Moreover, an objection to the alternative means of service provided in Article 10 does not represent a per se objection to other forms of service, such e-mail or publication. See In re S.

---

[5] See also, Chanel, Inc.  v. designerreplicachanel.com, Case 17-cv-62048-KMW (Nov. 8, 2017) (authorizing service of process on foreign defendants via e-mail and website publication despite China's objection to Article 10); Adidas AG et al v. 8877380, Case 17-cv-61647-DPG (S.D. Fla. Oct. 4, 2017) (same); Specialized Bicycle Components, Inc. v. 17 No.1-Own, Case 17-cv-61201-RNS (June 20, 2017) (same).

African Apartheid Litig., 643 F. Supp. 2d 423, 434, 437 (S.D.N.Y. 2009) (requiring express objection to alternative method of service by signatory nation to preclude that particular means of service). Consequently, China's objection to the means of alternative service provided in Article 10 is no bar to court-directed service and does not prevent this Court form authorizing alternative service of process via e-mail or publication. See, e.g., Gurung, 279 F.R.D. at 220 (approving service of process on foreign defendants via e-mail despite India's objection to Article 10, stating that an "objection to service through postal channels does not amount to an express rejection of service via electronic mail."); Stat Med. Devices, Inc., 2015 U.S. Dist. LEXIS 122000 at *8-9 (permitting service of process on foreign defendants via e-mail and substituted service on domestic counsel despite Poland's objection to Article 10, noting "This Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague Convention . . . does not equate to an express objection to service via electronic mail."); FTC v. PCCare247 Inc., Case No. 12-cv-7189-PAE, 2013 U.S. Dist. LEXIS 31969, at * 10 (S.D.N.Y. March 7, 2013) (authorizing service of process via email and Facebook, explaining that "Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); WhosHere, Inc., 2014 U.S. Dist. LEXIS 22084 (authorizing service of process on foreign defendants via e-mail despite Turkey's objection to Article 10); Richmond Techs., Inc. v. Aumtech Bus. Solutions, Case No. 11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011) ("[N]umerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that, like India, have objected to the alternative forms of service permitted under Article 10 of the Hague Convention.").

IV.    **CONCLUSION**

For the foregoing reasons, Louis Vuitton respectfully requests this Court grant the present motion and authorize service of the Summonses, the Complaint, and all subsequent pleadings and discovery in this matter upon each Defendant in this action:

(1)    via e-mail to either the e-mail addresses provided by Defendants as part of the domain registration records for each of their respective domain names, including service via registrar, or on the Internet websites operating under each of their respective corresponding domain names, including customer service e-mail addresses and onsite contact forms; or

(2)    via publication by posting copies of the Complaint, Summonses, and all subsequent pleadings and discovery on Plaintiff's serving notice website appearing at the URL http://servingnotice.com/Lxnnnw/index.html.

DATED: May 11, 2018.                          Respectfully submitted,

                                              STEPHEN M. GAFFIGAN, P.A.

                                              By: s:/**Virgilio Gigante**/_____
                                              Stephen M. Gaffigan (Fla. Bar No. 025844)
                                              Virgilio Gigante (Fla. Bar No. 082635)
                                              T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
                                              401 East Las Olas Blvd., #130-453
                                              Ft. Lauderdale, Florida 33301
                                              Telephone: (954) 767-4819
                                              Facsimile: (954) 767-4821
                                              E-mail: stephen@smgpa.net
                                              E-mail: leo@smgpa.net
                                              E-mail: raquel@smgpa.net

                                              Attorneys for Plaintiff Louis Vuitton Malletier, S.A.

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Dame |
|---|---|
| 1 | 2018copy.org |
| 2 | 2020kopl.com |
| 3 | aaahandbag.se |
| 4 | aaahandbags.cn |
| 5 | aaareplica6s.com |
| 5 | cheapimitationsale.com |
| 5 | easyreplicabags.com |
| 6 | aaareplicamall.com |
| 6 | fashionreplicamart.com |
| 7 | a-paraiba.net |
| 7 | ask-the-rabi.info |
| 7 | bagg.info |
| 7 | beliy.org |
| 7 | biz--biz.info |
| 7 | chine-club.info |
| 7 | entf.info |
| 7 | formel-eins.info |
| 7 | hillphones.info |
| 7 | hopeforyendi.info |
| 7 | kaz-ski.info |
| 7 | konkord.info |
| 7 | managed-wordpress-hosting.info |
| 7 | mastercleansediet.info |
| 7 | mytraveling.info |
| 7 | nazvali.org |
| 7 | nhantin.info |
| 7 | obat-stroke.info |
| 7 | ourbux.info |
| 7 | praca-24.info |
| 7 | pureleveragerussia.info |
| 7 | rapfan.org |
| 7 | rouxdi.info |
| 7 | samiul.info |
| 7 | tia-ok.org |
| 7 | tousatu.info |

| | |
|---|---|
| 7 | womenf.info |
| 7 | ywen.info |
| 8 | authentichandbagsonsale.com |
| 8 | authenticpursesonsale.com |
| 8 | originalpursesonsale.com |
| 8 | realluxuryonsale.com |
| 9 | bagsbestline.com |
| 10 | bagsheaven.cn |
| 10 | highbags.cn |
| 10 | highpurses.cn |
| 11 | bagsoutlet.pw |
| 11 | pshan.top |
| 12 | bbag2018.com |
| 13 | besthoodies.club |
| 13 | besthoodies.store |
| 13 | giftoutletshop.com |
| 13 | giftoutletstore.com |
| 13 | hoodieoutletshop.com |
| 13 | hoodiesclub.store |
| 13 | hoodiesclubstore.com |
| 13 | hoodiestreetstyle.com |
| 13 | hoodiesupreme.com |
| 13 | newclothes.store |
| 13 | streetfashioneu.com |
| 13 | streetstyleeu.com |
| 13 | streetvipeu.com |
| 13 | streetwearfans.com |
| 13 | styleeu2018.com |
| 13 | styleeu-buy.com |
| 13 | styleeuvip.com |
| 13 | stylistvipshop.com |
| 13 | supfashionshirt.com |
| 13 | supjacket.com |
| 13 | supjacket.shop |
| 13 | suplvoutlet.com |
| 13 | supoutlet.online |
| 13 | supoutletshop.com |
| 13 | supoutletstore.com |
| 13 | supreme2017eu.com |
| 13 | supremeaustore.com |

| 13 | supremecabuy.com |
|----|------------------|
| 13 | supremeeu2017.com |
| 13 | supremeeufashion.com |
| 13 | supremeeustyle.com |
| 13 | supremeeuvip.com |
| 13 | supremefans-eu.com |
| 13 | supremefreestyle.com |
| 13 | supremeinuk.com |
| 13 | supremelikes.com |
| 13 | suprememalleu.com |
| 13 | supremenewarrival.com |
| 13 | supremeonlineeu.com |
| 13 | supreme-onlineeu.com |
| 13 | supremeonline-eu.store |
| 13 | supremeonlinemart.com |
| 13 | supremeonlineoutlet.com |
| 13 | supremeonlinevip.com |
| 13 | supreme-outlet.online |
| 13 | supremeoutlet2017.com |
| 13 | supreme-outleteu.com |
| 13 | supremeoutletmarket.com |
| 13 | supremeseu.com |
| 13 | supremeshop.store |
| 13 | supremes-store.com |
| 13 | supremestore-eu.com |
| 13 | supreme-styles.com |
| 13 | supremestylevip.com |
| 13 | supreme-t.com |
| 13 | supremetopsale.com |
| 13 | supremetopstore.com |
| 13 | supremeukbuy.com |
| 13 | supremeukhome.com |
| 13 | supremeukmall.com |
| 13 | supremeukstyle.com |
| 13 | supremeusbuy.com |
| 13 | supremeusfans.com |
| 13 | supremevip2018.com |
| 13 | supremevipca.com |
| 13 | supremevipeu.com |
| 13 | supremevipfans.store |

| | |
|---|---|
| 13 | supreme-vipstyle.com |
| 13 | supremevogue.shop |
| 13 | supremeweareu.com |
| 13 | supremewears.com |
| 13 | supremewearus.com |
| 13 | supremexmas.com |
| 13 | supremexmas.online |
| 13 | sups.online |
| 13 | topsupoutlet.com |
| 14 | bnyop.com |
| 14 | dokei333.com |
| 14 | hik888.com |
| 15 | borselouis-it.com |
| 16 | borselouisvuittonitaly.com |
| 16 | borseonline.ru |
| 16 | borsesconto.net |
| 16 | cheapmlbjerseysin.com |
| 17 | buypetya.co |
| 17 | cocomote.co |
| 17 | hotmise.co |
| 18 | capturesstore.com |
| 18 | lv-outlet.com |
| 19 | cheapimitationhandbags.com |
| 20 | cheapsupremehoodies.com |
| 21 | cheapsupremesale.com |
| 22 | cone2017.com |
| 23 | crazydreamsstudio.com |
| 23 | ezbowler.com |
| 23 | guildawakened.net |
| 23 | mountbattenferry.net |
| 23 | pakistanalpine.com |
| 23 | shopliftingsolutions.co |
| 23 | ssfranking.com |
| 23 | theatrestudioinc.org |
| 23 | thefttalk.co |
| 24 | crkopi.com |
| 25 | cvt888.com |
| 26 | dsreplicabags.com |
| 27 | ebuyer2017.com |
| 28 | eluxurylouisvuitton.us |

| 29 | essenceofluxurys.cn |
| 30 | fabaaa.net |
| 31 | fakebagsmart.com |
| 31 | replicasstores.com |
| 32 | ggkm34.com |
| 33 | handbagsonsales.co.uk |
| 34 | hijapan999.com |
| 35 | hlkjgs.com |
| 36 | hoadiphone.com |
| 37 | hotsbag.com |
| 38 | ikeikekaba.com |
| 39 | ikfiets.nu |
| 40 | indialouisvuittons.com |
| 40 | louisvuittonsdeutschland.com |
| 41 | instagrambags.com |
| 42 | ireplicahandbags.com |
| 43 | jpxiaowu.com |
| 44 | karrullen.nu |
| 45 | louismouru.com |
| 46 | louisvuitonnoutlet.com |
| 46 | louisvuitton-handbags.com.co |
| 46 | vipbestbags.com |
| 46 | viphandbags.us |
| 47 | louisvuitton2u.com |
| 47 | saclouisvuittonfr.com |
| 48 | louisvuittonbestellennederland.nl |
| 49 | louisvuittongb.com |
| 50 | louisvuitton-neverfullgm.us |
| 51 | louisvuittonoutle.it |
| 52 | louis-vuittonoutlet.name |
| 52 | lvhandbags.us |
| 53 | louisvuittonoutletbuy.co.uk |
| 54 | louisvuitton-southafrica.com |
| 55 | luxurybagseu.com |
| 56 | luxuryfakes.com |
| 57 | luxurygiftsbags.com |
| 58 | luxuryrw.co.uk |
| 59 | lvbagsen.com |
| 60 | lvs-taschen.com |
| 61 | lvstore.org |

| 62 | ontimenew.com |
| 63 | perfectreplicamarkt.com |
| 64 | pursessales.com |
| 64 | sharereplicahandbags.com |
| 64 | shoppingreplicas.com |
| 65 | pursesshopping.com |
| 66 | pursevalleyfactories.com |
| 67 | rabukaba.com |
| 68 | replicabagesonsale.com |
| 69 | replicabesthandbags.com |
| 70 | replicafashionshop.com |
| 71 | replicahandbags9y.com |
| 72 | replicasaleline.com |
| 73 | replicasshop.com |
| 74 | replicasstyle.top |
| 75 | sale8899.org |
| 76 | salekopi.com |
| 77 | sbrands.fr |
| 78 | sky2019.com |
| 79 | subbut.com |
| 80 | sunosun.com |
| 81 | supmeau.com |
| 81 | supmeho.com |
| 82 | supremen.club |
| 82 | supremew.club |
| 83 | topeyle.com |
| 84 | topteenpo.com |
| 85 | toreplicabags.com |
| 86 | unsereuni.ch |
| 87 | wx31.com |
| 88 | xsupremejp.com |